# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN REPERTORY FILM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 6034 |
| ) | |
| BLUE BEAR PRODUCTIONS and ) | |
| DAVID PERLMUTTER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court is defendant David Perlmutter's motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). For the reasons explained below we grant the defendant's motion.

## BACKGROUND

In 1995 plaintiff American Repertory Film Company, Inc. ("ARFC"), an Illinois corporation, sold the rights to a screenplay entitled "Ms. Bear" to defendant Blue Bear Productions ("Blue Bear"), a Canadian company based in Toronto, Canada. (Compl. ¶¶ 3-4, 7.) Defendant David Perlmutter is Blue Bear's president. (Id. at ¶ 5.) Under the parties' agreement ARFC was entitled to receive $81,250.00 "out of the budget" of the film based on the screenplay, plus a percentage of the film's "net proceeds." (See Rights Acquisition Agmt., attached as Ex. A to Compl., ¶¶ 1(a)-(b), 4(b).)

Blue Bear agreed to maintain complete and accurate records "in connection with the production and exploitation of the film," and to provide ARFC with "detailed quarterly statements reflecting all revenues from the exploitation of the Picture." (Id. at ¶ 8.) In addition, Blue Bear granted ARFC a security interest in, among other property, the proceeds of the film and any sequels. (See Security Agmt., attached as Ex. 6 to the Rights Acquisition Agmt., ¶ 3.) ARFC contends that it never received: (1) a full accounting of the film's costs, expenses, and revenues; (2) "detailed" quarterly reports; or (3) its fee. (Compl. ¶ 12.) In 2000, without notifying ARFC, Blue Bear made (or authorized to be made) a sequel entitled "Bear With Me," which included characters and footage from the original film. (Id. at ¶ 13.) Blue Bear has not provided ARFC with an accounting in connection with the sequel, or paid ARFC any profits derived from that film. (Id. at ¶ 14.) In its complaint in this case ARFC requests an accounting (Count I) and a writ of possession over the proceeds and any physical copies of the films in Blue Bear's possession (Count II). ARFC has also brought constructive fraud (Count III) and conversion (Count IV) claims against Blue Bear and Perlmutter.

## DISCUSSION

Perlmutter, a Canadian citizen and resident, contends that we lack personal jurisdiction over him. (See Aff. of D. Perlmutter, attached as Ex. A to Def.'s Mot. to Dismiss (hereinafter

"Perlmutter Aff."), ¶ 2.)[1]  "A federal district court sitting in diversity in Illinois has jurisdiction over a non-consenting, non-resident defendant if an Illinois state court would have jurisdiction." Juristech Assoc., Ltd. v. Krieg Devault Alexander & Capehart, LLP, No. 02 C 620, 2002 WL 1343746, *1 (N.D. Ill. June 18, 2002).  ARFC "has the burden of demonstrating the existence of personal jurisdiction." RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997).  "Three distinct obstacles to personal jurisdiction must generally be examined: 1) state statutory law, 2) state constitutional law, and 3) federal constitutional law." Id. Because Illinois's long-arm statute "authorizes personal jurisdiction to the constitutional limits, the three inquiries mentioned above collapse into two constitutional inquiries — one state and one federal." Id.  Because "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," Hyatt Intern. Corp. v. Coco, 302 F.3d 707, 715 (7th Cir. 2002), a single due-process analysis will suffice. See, e.g., Dupree v. Greyhound Lines, Inc., 540 F.Supp.2d 946, 950 (N.D. Ill. 2008).

A defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

---

[1]/ When Blue Bear failed to appear in this case and answer or otherwise respond to ARFC's complaint we entered a default judgment against it. (See Minute Order, dated Oct. 14, 2009 (DKT # 18).)

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). There are two types of jurisdiction, general and specific. "So-called general jurisdiction is proper only when the defendant has 'continuous and systematic' contacts with the state in question; if such contacts exist, the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." Hyatt, 302 F.3d at 713. "Specific jurisdiction refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'" RAR, 107 F.3d at 1277 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8.)). It is undisputed that Perlmutter's contacts are not continuous and systematic, (see Perlmutter Aff. ¶¶ 2-11), therefore only specific jurisdiction is at issue in this case.

Perlmutter's relevant contacts with Illinois consist of one visit to Chicago on October 23, 2003. (Compl. ¶ 17; see also Perlmutter Aff. ¶ 12.) ARFC contends, however, that he committed "constructive fraud" on that one occasion. See 735 ILCS 5/209(a)(2) (creating personal jurisdiction over any person who commits a "tortious act within this State"); see also Marine Retailers Assoc. of America v. Southern Exposition Management Co., No. 96 C 2502, 1996 WL 507279, *3 (N.D. Ill. Sept. 4, 1996) ("[E]ven one visit to the state is sufficient to establish the

minimum contacts necessary to support personal jurisdiction, if the cause of action arose out of the defendant['s] conduct on that visit."). Under California law, which the parties at least implicitly agree governs their dispute, constructive fraud "consists":

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or

2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

Cal. Civ. Code § 1573.[2] "Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." Michel v. Palos Verdes Network Group, Inc., 156 Cal.App.4th 756, 763 (2007) (citation and internal quotation marks omitted). Perlmutter denies that he owed ARFC any such duty. ARFC disagrees, citing the provision of Rights Acquisition Agreement requiring the parties to consult with each other "in good faith" about exploiting the screenplay and any movie derived from it. (See Rights

---

[2] The parties' contract states that it "shall be governed by and construed in accordance with the laws of California." (Rights Acquisition Agmt. ¶ 15.) It is not clear from this provision that the parties intended California tort law to apply. See Kuehn v. Childrens Hosp., Los Angeles, 119 F.3d 1296, 1302 (7th Cir. 1997) (Choice-of-law provisions "will not be construed to govern tort as well as contract disputes unless it is clear that this is what the parties intended."). There is authority, however, that supports applying the law specified in a choice-of-law provision where (as here) the "tort claim is dependent upon the contract." Birnberg v. Milk St. Residential Associates Ltd. Partnership, Nos. 02 C 0978, 02 C 3436, 2003 WL 151929, *14 (N.D. Ill. Jan. 1, 2003). Perlmutter is not a party to the contract, but he does not challenge ARFC's resort to California law. (See Def.'s Mot. at 1; Def.'s Mem. at 9-15.) In the absence of any contrary argument from the parties, we will apply California law.

Acquisition Agmt. ¶ 6c.)[3] Every contract contains an implied good-faith obligation, but not every contract creates a fiduciary duty. See New v. New, 306 P.2d 987, 994 (Cal. App. 1957) ("Being of universal prevalence [the implied covenant of good faith] cannot create a fiduciary relationship; it affords basis for redress for breach of contract and that is all."); see also Wolf v. Superior Court, 107 Cal.App.4th 25, 31 (2003) (similar). On the other hand, profit-sharing arrangements sometimes give rise to fiduciary duties on the theory that they evidence a joint venture or something "akin" to one. See Nelson v. Abraham, 177 P.2d 931, 934 (Cal. 1947); Stevens v. Marco, 305 P.2d 669, 679-81 (Cal. App. 1956); see also Wolf, 107 Cal.App.4th at 30-34. "The existence of a joint venture gives rise to a fiduciary or confidential relationship." See Celador Intern. Ltd. v. Walt Disney Co., 347 F.Supp.2d 846, 853 (C.D. Cal. 2004). ARFC may have a plausible claim that the parties' relationship was "akin" to a joint venture, even though the parties do not use that term. (See, e.g., Rights Acquisition Agmt. ¶¶ 1(c) & 6 (granting ARFC the right to consult in production matters); ¶ 5 (requiring ARFC to "reinvest" its fee in the film); ¶ 14 (requiring the parties to "devote as much time as reasonably

---

[3] ARFC also cites a provision of an "Assignment," attached as an exhibit to the Rights Acquisition Agreement, that "irrevocably constitutes or appoints BLUE BEAR as [ARFC's] lawful attorney-in-fact to do all acts or things permitted or contemplated by the terms hereof." (See Assignment, attached as Ex. 5 to the Rights Acquisition Agmt., ¶ 4.) The "acts or things permitted or contemplated by" the Assignment include all steps necessary to convey all of ARFC's rights in the screenplay to Blue Bear. Accordingly, we do not believe that this provision can be construed to create a fiduciary duty such as governs the relationship between an attorney and his client.

necessary" to fulfill their duties under the agreement and with respect to the film)); cf. Wolf, 107 Cal.App.4th at 32-33 (finding no joint venture where the defendant was free to develop (or not develop) the property purchased from the plaintiff). In any event, the existence of a joint venture is a question of fact, Celador, 347 F.Supp.2d at 853, and the parties have not sufficiently addressed the matter to permit us to resolve the issue as a matter of law at this stage of the case.[4] We will tentatively assume, then, that Blue Bear owed ARFC a fiduciary duty that required it to disclose the existence of "Bear With Me." And we will also assume for purposes of this motion, even though we believe the issue is far from clear, that Perlmutter may be personally liable for not disclosing that fact. (Compl. ¶ 5 (alleging that Perlmutter "directed [Blue Bear's] actions and participated personally in the tortious conduct of which Plaintiff complains"); see PMC, Inc. v. Kadisha, 78 Cal.App.4th 1368, 1379 (Cal. App. 2000) ("Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize that it be done.").

Nevertheless, we conclude that the necessary connection between the alleged tort and the forum state is missing.

---

[4] Compare Wolf, 107 Cal.App.4th at 32 (concluding as a matter of law that the plaintiff had not sufficiently alleged the existence of a joint venture), with April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 820 (1983) (concluding on facts similar to Wolf that the issue could not be resolved on the pleadings).

Perlmutter did not disclose the existence of "Bear With Me" on October 23, 2003 *or at any other time*. See <u>McIlwee v. ADM Industries, Inc.</u>, 17 F.3d 222, 224 (7th Cir. 1994) ("If defendants were withholding information while they were on the phone with McIlwee, they were *always* withholding information. Nothing stopped them at any time from using any method of communication to divulge the earn share program to ADM shareholders.") (emphasis in original). Besides alleging that Perlmutter had the opportunity to disclose information, ARFC must also allege facts indicating that Perlmutter intended to "affect Illinois interests." <u>Id.</u> In <u>McIlwee</u> the Court suggested that in a non-disclosure case the plaintiff might satisfy this burden by alleging that the defendant acted with the purpose of "lulling" the defendant into a false sense that no fraud was afoot. <u>Id.</u> But it held that merely alleging that the defendant discussed matters related to the subject matter of the alleged fraud was insufficient. <u>Id.</u> at 224-25. ARFC's allegation that Perlmutter came to Chicago "to talk to Plaintiff about the revenues relating to the 'exploitation of the Picture'" is very similar to the allegation that the <u>McIlwee</u> Court rejected as insufficient. <u>Id.</u> ("McIlwee averred only that he and defendants 'discuss[ed] business matters and the sale' over the telephone. Even liberally construed, McIlwee's allegations and averments do not support an inference that defendants harbored a fraudulent intent in withholding information from McIlwee during

those discussions."). One difference here is that Perlmutter visited ARFC in Chicago, whereas the defendant in <u>McIlwee</u> placed calls from outside the state to the plaintiff in Illinois. But we are not persuaded that the analysis should be different here (indeed, ARFC does not even attempt to distinguish <u>McIlwee</u>). If merely having the "opportunity" to disclose information is insufficient, <u>id.</u> at 224, then the fact that the opportunity arose in one face-to-face meeting in Illinois does not require a different outcome. The only evidence in the record indicates that Perlmutter was in Illinois on personal business and met with ARFC as a "courtesy." (<u>See</u> Perlmutter Aff. ¶ 12.) ARFC has not filed any counter-affidavit or other evidence that would tend to substantiate a claim that Perlmutter had some ulterior motive. We conclude that Perlmutter's one visit to Illinois is insufficient to support personal jurisdiction over him.[5]

## **CONCLUSION**

Defendant Perlmutter's motion to dismiss (19) is granted and the case is dismissed as to him for lack of personal jurisdiction.

DATE: April 29, 2010

ENTER: _____
John F. Grady, United States District Judge

---

[5] Because we conclude that we do not have personal jurisdiction over Perlmutter, it is unnecessary to address his other challenges to ARFC's claims.